# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JOANN BATT,                     )
                                )
       Plaintiff,               )
                                )
v.                              )    Case No. CIV-15-002-JHP-KEW
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security Administration,        )
                                )
       Defendant.               )

## REPORT AND RECOMMENDATION

Plaintiff Joann Batt (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on January 10, 1965 and was 48 years old at the time of the ALJ's decision.  Claimant completed her high school education.  Claimant has worked in the past as a home health aide and assembly line worker.  Claimant alleges an inability to work beginning March 28, 2008 due to limitations resulting from problems with her right femur and right fibula, carpal tunnel syndrome, right shoulder problems, sarcoidosis, PTSD, and depression.

**Procedural History**

On July 29, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After an administrative hearing, the Administrative Law Judge ("ALJ") found Claimant was disabled from March 28, 2008 through May 17, 2010 because her impairment met Listing 1.06. The ALJ found, however, that Claimant's disability ended due to medical improvement. The Appeals Council granted Claimant's request for review, upheld the finding of disability, and remanded the case to Defendant for a different ALJ to consider the period after May 17, 2010.

On December 19, 2012, ALJ Doug Gabbard, II conducted a video hearing with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in McAlester, Oklahoma. The ALJ entered an unfavorable decision on September 10, 2013. The Appeals Council denied review on October 30, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform sedentary work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to conduct a proper credibility determination; (2) reaching an erroneous RFC; and (3) failing to properly weigh the opinion evidence from Claimant's treating physician.

**Credibility Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease, status post left femur fracture and surgical repair, remote history of right tibia and fibula repair in 1999, affective disorder, and anxiety disorder. (Tr. 15). The ALJ concluded that Claimant retained the RFC to perform sedentary work except that she was limited to unskilled work (work which needs little to no judgment to do simple duties that can be learned on the job in a short period of time) where supervision is simple, direct, and concrete, interpersonal contact with supervisors and co-workers is incidental to the work performed (e.g., assembly work), and no contact with the general

public. The ALJ determined Claimant can only occasionally use foot controls, cannot climb, balance, stoop, kneel, crouch, or crawl, and must avoid exposure to unprotected heights or moving machinery. (Tr. 18). After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of cutter and paster and surveillance system monitor, both of which the ALJ found to exist in sufficient numbers both regionally and nationally. (Tr. 24). As a result, the ALJ found Claimant was not disabled from May 18, 2010 through the date of the decision. (Tr. 25).

Claimant first contends the ALJ failed to engage in a proper evaluation of his credibility. Claimant testified that she has not returned to work because she still hurts and has chronic pain. She also stated that she has been falling a lot because her knees give out. She cannot sleep right because it hurts to lay on her left side. Claimant takes pain medication, muscle relaxants, Prozac, and medication to help her sleep. (Tr. 36-37).

Claimant testified that she could sit for probably 40 minutes but she gets stiff and takes a while to move if she stays sitting longer. The pain is concentrated in her hip area on the left side and goes in between right through the leg to the mid part of her calf. She also stated that she can stand for about 40 minutes and

then she tires and has to sit down.  Lying down helps the most. She lies down throughout the day for about five hours a day.  She stated that she can walk with a cane for about 300 feet. (Tr. 37-39).

Claimant testified that she is afraid to lift anything, even a gallon of milk.  She stated that she could possibly lift five to ten pounds.  (Tr. 39-40).

Her medication causes constipation and nausea.  She uses a heating pad and hot baths to help with the pain.  (Tr. 40).

Claimant gets up at around 7:00 a.m., gets her daughter on the school bus and goes back to sleep until 10:00 a.m. or 11:00 a.m. (Tr. 41).  She fixes a simple breakfast of cereal and then lays back down until her daughter gets home from school at about 4:00 p.m.  Her daughter does most of the cleaning but Claimant tries to help. (Tr. 42).  Claimant cooks TV dinners and simple meals so she does not have to stand on her feet.  In the evening, she returns to bed and goes to the bathroom when she needs to go to the bathroom. (Tr. 43).

Claimant's daughter-in-law shops for her.  Claimant does not go to church.  She goes to the store and right back to get out of the house a little bit.  She has driven a little.  (Tr. 44).

Claimant tried physical therapy but it hurt too bad,

7

especially when she discovered her bones had not healed together. (Tr. 45). The bones have now healed but her primary care physician has not ordered physical therapy. (Tr. 46). She has been told by her doctor that arthritis and inflammation has set into her bones. (Tr. 47).

The ALJ found Claimant's testimony not entirely credible. (Tr. 19). He noted Claimant had a lengthy rehabilitation after suffering a fractured femur during a motor vehicle accident but the condition slowly improved. He stated that she did limited physical therapy and noted that her physician anticipated her return to work. Consultative examination by Dr. Reddy indicated Claimant had 5/5 strength in upper and lower extremities and was able to ambulate with and without a cane. (Tr. 19). The ALJ acknowledged the conservative care received by Claimant for her condition. During many of the examinations, Claimant demonstrated good movement and a normal gait. Additionally, Claimant was counseled for monthly visits but Claimant left without being seen or receiving prescriptions. (Tr. 20). The ALJ cited the record and Claimant's activities to conclude Claimant was not limited to the extent she alleged. (Tr. 21).

Claimant challenges the adequacy of the ALJ's credibility analysis, contending he appeared to degrade Claimant's credibility

8

because "she was constantly pursuing medical treatment." In fact, the ALJ found Claimant did not continue recommended, regular visits but did seek pain medication and became upset when her hydrocodone was reduced. (Tr. 20).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the

9

individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391.  However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence."  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

In this case, the ALJ thoroughly discussed the discrepancies in the medical record which adversely reflected upon the credibility of Claimant's statements of limitation.  The discussion contains thoughtful reasoning and careful consideration of the record.  No error is found in this credibility analysis.

## RFC Determination

Claimant next asserts the ALJ's RFC is not supported by the medical record.  Claimant contends the ALJ relied upon the absence of evidence to conclude she could perform sedentary work, relied upon her activities of daily living, and did not accept Claimant's subjective allegation in arriving at the RFC.  The ALJ cited to extensive objective medical evidence to support his conclusions. He did not rely exclusively upon Claimant's activities to reach his

10

RFC but did consider it as a factor in his conclusions which is permitted. As stated, no error is found in the ALJ's credibility assessment and, therefore, no additional restrictions are required in the RFC based upon Claimant's testimony. Claimant cites to no other omission of evidence from the ALJ's consideration other than her own subjective testimony.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional

11

capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).

The ALJ's RFC assessment was supported by substantial evidence. Nothing in the medical record supports further restriction in Claimant's ability to engage in basic work activities than found by the ALJ in his RFC analysis. This Court finds no error in the ALJ's ultimate RFC findings.

**Consideration of Treating Physician's Opinion**

Claimant contends the ALJ failed to provide sufficient weight to the opinion of her treating physician, Dr. Steven Delia. Dr. Delia completed a physical medical source statement on January 20, 2010. The statement essentially finds Claimant can do nothing. He estimates Claimant can sit, stand, and walk for thirty minutes; she can lift no weight; cannot bend, squat, crawl, climb, or reach; can never engage in simple work tasks due to the effect of pain on her attention and concentration; will need take an unknown number of unscheduled breaks for an unknown period of time; and will have good days and bad days; be absent from work more than four days a month. (Tr. 541-42).

Claimant contends the ALJ failed to consider giving Dr. Delia's opinion reduced weight from controlling weight. She ignores the fact he gave the opinion "little weight" because it was

12

not supported by his own treatment records or Claimant's activities. (Tr. 23). As the ALJ noted, Dr. Delia's statement would essentially relegate Claimant to bed. Her activities indicate otherwise.

The ALJ was required to evaluate Dr. Delia's opinion as well as Dr. Rogow's identical statement issued two years later under the factors set forth in Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) and he expressly did so. (Tr. 22). The ALJ provided extensive justification for discounting the weight to which this opinion evidence is entitled. (Tr. 22-23). This Court finds the reasoning provided to be persuasive and appropriate given the extreme degree of limitation set forth by these physicians.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate

13

review of this decision by the District Court based on such findings.

DATED this 15th day of August, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE